UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POST, LLC<br> Plaintiff,<br>  v.<br>BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY,<br> Defendant. | Civil Action No. 20-2972 (JDB) |

### MEMORANDUM OPINION

  Plaintiff POST, LLC ("POST") brings this suit against defendant Berkshire Hathaway Specialty Insurance Company ("BHSIC") in its capacity as a surety for WCS Construction, LLC ("WCS"). POST, a construction company, alleges that WCS failed to pay for work POST performed as a subcontractor to WCS and that, by the terms of a payment bond issued by BHSIC to WCS, BHSIC is liable for the unpaid sum. BHSIC moves to dismiss, arguing that POST's complaint is barred by res judicata because its functionally identical claim against WCS in arbitration proceedings was "dismissed with prejudice" due to POST's failure to pay the required fees. Because that dismissal with prejudice would bar POST from proceeding against WCS in federal court, the argument goes, so too does it bar POST's claim against BHSIC. The Court does not agree: a dismissal by an arbitrator for nonpayment of fees, even a dismissal "with prejudice," is not a judgment "on the merits" entitled to claim-preclusive effect in related litigation. However, in light of the narrow grounds for dismissal presented by BHSIC, gaps in the record before the Court, and the need for further briefing regarding the best path forward for this suit, the Court will stay BHSIC's deadline to answer POST's amended complaint and permit the parties to file supplemental submissions.

1

## BACKGROUND

This action stems from a dispute between a general contractor, WCS, and one of its subcontractors, POST. On January 24, 2019, WCS hired POST to perform "certain masonry restoration and related work" on the renovation of an apartment complex. Am. Compl. [ECF No. 10] ¶¶ 8–9. POST alleges that, in the course of performing this work, WCS—and in particular Vice President David Jones, see id. ¶ 18—singled POST out for unfair and degrading treatment. This treatment allegedly included "demand[ing] that POST work evenings and weekends at no additional cost to WCS," id. ¶ 25; arbitrarily altering POST's work assignments, including by "demanding that POST perform work not shown on the drawings and/or not within the scope of the POST subcontract," id. ¶ 19; and "malign[ing], berat[ing] and denigrat[ing] [POST] for not having sufficient manpower onsite" despite the fact that POST "had the most employees and subcontractor partners at the site working," id. ¶ 22. Perhaps most relevant to the present action, POST also alleges that WCS delayed and/or outright refused to pay POST for its work, either by "rescind[ing], alter[ing] and modify[ing] POST's pay applications downwards, even after they were approved during the ordinary course of dealing," id. ¶ 20, or by "issu[ing] . . . a pretextual, bald 'Notice of Default' with generic boilerplate averments of default" whenever "a payment was due and/or POST management would ask WCS to issue payment," id. ¶ 33. POST, which is owned, operated, and almost exclusively staffed by African-Americans, id. ¶ 12, also strongly implies that this treatment was motivated by racial animus, see id. ¶¶ 28–30, 32, 35–36.[1] Ultimately—and, POST alleges, pretextually—WCS terminated POST's subcontract, id. ¶ 32, and both POST and WCS now argue that the other is liable for significant damages, see id. ¶¶ 38–39

---

[1] It is unclear if or how this allegation of racial discrimination is relevant to the present suit, which is limited to BHSIC's alleged liability for "the unpaid work performed and the unpaid labor, materials and services POST provided." Am. Compl. ¶ 39. Although these allegations may help explain why WCS failed to pay POST, it does not appear that they are essential to establishing liability here.

(seeking damages of "at least $305,271.24"); Def.'s Consent Mot. to Stay Pending Arbitration [ECF No. 9] at 1 (stating that WCS, in turn, claims $744,836.00 from POST "for damages related to the construction project").

On October 15, 2020, POST filed this case against BHSIC, asserting a claim for "breach of payment bond." Compl. [ECF No. 1] at 8 (cleaned up). POST alleges that BHSIC issued a payment bond to WCS, Am. Compl. ¶¶ 2, 38–39, in which BHSIC "[bound] itself to pay claimants having furnished labor and materials to the . . . construction project" in question, id. ¶ 2. As BHSIC explains in its motion to dismiss:

> [A] payment bond . . . guarantees that a claimant . . . who performs work for the principal on a project[] will be paid for the work it performs. If the principal does not make the payment, the surety will make the payment in its place. In that regard, in the context of a construction contract, the surety acts as a backstop to the principal failing to pay its subcontractors and suppliers amounts actually owed.

BHSIC's Mem. in Supp. of Its Mot. to Dismiss with Prejudice for Failure to State a Claim Upon Which Relief Can Be Granted [ECF No. 14] ("Def.'s Mot.") at 6. Thus, because POST alleges that the principal (WCS) has failed to pay POST what it owes, POST now seeks funds from the surety (BHSIC) to fulfill that unpaid obligation. See Am. Compl. ¶ 39 ("Pursuant to the Payment Bond and other applicable law, BHSIC is liable to POST for the unpaid work performed and the unpaid labor, materials and services POST provided . . . ."). On February 19, 2021, the Court stayed this action at the parties' request in light of pending arbitration proceedings between WCS and POST, Min. Order, Feb. 19, 2021, in hopes that "[r]esolution of that [arbitration] w[ould] substantially narrow the issues before this Court," Def.'s Consent Mot. to Stay Pending Arbitration at 1.

Suffice it to say, those proceedings did not go smoothly. As relevant here, POST encountered difficulty in paying the arbitration fees, and after receiving multiple extensions, POST failed to make the required payment to the American Arbitration Association ("AAA") by the due

3

date of January 10, 2022.  Ex. A to Joint Status Report [ECF No. 13-1] ("Arbitrator's Order") ¶¶ 4–6; Def.'s Mot. at 5.  After this deadline passed, first POST's counsel and then its President informed the arbitrator that POST "did not have the funds to make a deposit at this time," Arbitrator's Order ¶¶ 7–8, and requested that the arbitration—then a little over a month away—be postponed in order to give POST time to pay on an installment plan, id.  The arbitrator denied this request, noting that such a postponement "would work a hardship on [WCS]," id. ¶ 11, and concluding that "there is no reason to permit POST to postpone this Arbitration for what may become an extended period in the hope that payment will be made," id. ¶ 13.  On January 13, 2022, the arbitrator, relying on her authority to take "measures . . . limiting a party's ability to assert or pursue their claim," see id. ¶ 3 (quoting Am. Arbitration Ass'n, Construction Industry Arbitration Rules & Mediation Procedures R-59(b) (July 2015) ("AAA Construction Rules"),[2] ordered that "the counterclaims of [POST] are hereby dismissed with prejudice," Arbitrator's Order at 3, but she also specified that nothing about the order "prohibits or affects POST's ability to defend against [WCS's] claims," id. ¶ 14.  Nonetheless, on the following day WCS voluntarily dismissed its claim against POST, and the AAA "immediately began the process of closing the case as no claims remained."  Joint Status Report [ECF No. 13] at 1.

On February 14, 2022, just shy of one year after the Court stayed this litigation, the parties informed the Court of these developments and expressed their respective positions regarding the "impact of [the] arbitration on [the] instant matter."  Joint Status Report at 1 (cleaned up).  BHSIC argued that "the arbitrator's decision to dismiss POST's claims with prejudice requires the dismissal of this action as well" under principles of res judicata (specifically, the doctrine of claim preclusion), id., while POST contended that "this matter may proceed as originally pled" because

---

[2] The AAA Construction Rules are available at https://www.adr.org/sites/default/files/Construction%20Rules.pdf.  In addition, POST attached an excerpt of the Rules, including R-59, as Exhibit A to its opposition brief.  See Pl.'s Ex. A [ECF No. 15-1].

"[n]o final arbitration award was received by WCS," id. at 2.  Concluding that one paragraph apiece in a joint status report was an insufficient basis for determining whether dismissal was warranted, the Court lifted the stay in this matter and ordered BHSIC to file a motion to dismiss on the grounds articulated in the status report.  Min. Order, Feb. 15, 2022.  BHSIC filed its motion on March 11, see generally Def.'s Mot.; POST timely filed its opposition on April 1, see generally Opp'n to Def.'s Mot. [ECF No. 15] ("Pl.'s Opp'n"); and BHSIC filed its reply brief on April 15, see generally BHSIC's Reply in Supp. of Def.'s Mot. [ECF No. 16] ("Def.'s Reply").  The motion is now fully briefed and ripe for decision.

## LEGAL STANDARD

Under District of Columbia law, "[t]he doctrine of res judicata (claim preclusion) dictates that a final judgment on the merits of a claim bars relitigation in a subsequent proceeding of the same claim between the same parties or their privies."  Bell v. First Invs. Servicing Corp., 256 A.3d 246, 253 (D.C. 2021) (cleaned up; citation omitted); accord Jackson v. Off. of the Mayor of D.C., 911 F.3d 1167, 1170–71 (D.C. Cir. 2018) ("D.C. law establishes that, 'under the doctrine of claim preclusion or res judicata, when a valid final judgment has been entered on the merits, the parties or those in privity with them are barred, in a subsequent proceeding, from relitigating the same claim . . . .'" (cleaned up) (quoting Wash. Med. Ctr., Inc. v. Holle, 573 A.2d 1269, 1280–81 (D.C. 1990))).[3]  Although res judicata is an affirmative defense more at home in an answer than a

---

[3] There is no constitutional provision, statute, or binding judicial decision dictating what law governs the preclusive effect a federal court sitting in diversity must afford a decision in an arbitral proceeding not associated with a state-court action.  Cf. Camp v. Kollen, 567 F. Supp. 2d 170, 172 n.4 (D.D.C. 2008) (treating an unconfirmed arbitration award as a state-court judgment and applying D.C. preclusion law "because the [arbitral] award was rendered in the context of a District of Columbia action").  But the Court concludes that the District of Columbia's rules of claim preclusion should apply here.  To hold that the preclusive effect of an arbitrator's order might differ depending on whether a plaintiff sued in state or federal court would fly in the face of the longstanding principle that, "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."  Guar. Tr. Co. of N.Y. v. York, 326 U.S. 99, 109 (1945).  The D.C. Circuit, relying on similar considerations, arrived at an analogous rule in a different but instructive context, holding in Semler v. Psychiatric Institute of Washington, D.C., Inc., 575 F.2d 922 (D.C. Cir. 1978), that a federal court sitting in diversity must put itself in the shoes of the corresponding state court when determining the

pre-answer motion to dismiss, a res judicata argument "is properly brought in a pre-answer Rule 12(b)(6) motion when all relevant facts are shown by the court's own records," including documents of which the court takes judicial notice.[4]  Perez v. KIPP DC Supporting Corp., Civ. A. No. 21-929 (RC), 2022 WL 474143, at *3 (D.D.C. Feb. 16, 2022) (cleaned up; citation omitted); see also Fordham v. Fannie Mae, 49 F. Supp. 3d 77, 83 (D.D.C. 2014) ("It is appropriate to dismiss a case barred by res judicata under Rule 12(b)(6)." (citing Nader v. Democratic Nat'l Comm., 590 F. Supp. 2d 164, 169 (D.D.C. 2008))).

## ANALYSIS

At the outset, there seems to be no dispute that all but one of the prerequisites for claim preclusion are satisfied here.  The parties are sufficiently identical—BHSIC, as WCS's surety, may assert any res judicata defense WCS could assert.  See, e.g., Westcott Constr. Corp. v. Firemen's Fund of N.J., 996 F.2d 14, 17 (1st Cir. 1993) ("Firemen's, as surety, is only liable to the extent its principal, Crouse, is liable.  Firemen's benefits just as Crouse does from the application of res judicata." (internal citation omitted)); Broder v. Hartford Accident & Indem. Co., 106 F. Supp. 343, 346 (D.D.C 1952) (holding that order dismissing claim with prejudice of claim against

---

preclusive effect of a judgment issued by a different federal court sitting in diversity.  575 F.3d at 927–28.  Finally, at least one judge in this District appears to have applied D.C. law in determining the preclusive effect of an arbitration award issued by the International Court of Arbitration (though without explicit discussion of this choice-of-law question).  See Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. "Rosvoorouzhenie", 172 F. Supp. 2d 79, 84, 95 (D.D.C. 2001) (citing D.C. Court of Appeals cases for the governing legal principles).

Ultimately, however, the distinction between federal and state law in this case is without real difference: "the D.C. law of claim preclusion does not differ significantly from the federal," Demisse v. Aldon Mgmt. Corp., Civ. A. No. 18-2270 (ABJ), 2020 WL 1244931, at *3 (D.D.C. Mar. 16, 2020) (quoting Stanton v. D.C. Court of Appeals, 127 F.3d 72, 78 n.4 (D.C. Cir. 1997)), and courts applying one body of law may rely on decisions applying the other, e.g., Univ. of Colorado Health v. Azar, 486 F. Supp. 3d 185, 202–03 & n.11 (D.D.C. 2020).

[4] The Court takes judicial notice of the arbitrator's January 13 order dismissing POST's counterclaim, which the parties attached to their February 14, 2022 joint status report.  See Castillo v. CleanNet USA, Inc., 358 F. Supp. 3d 912, 944 7 n.20 (N.D. Cal. 2018) (taking judicial notice of document from arbitration proceeding setting forth fee schedule); Camp, 567 F. Supp. 2d at 173 & n.5 (taking judicial notice of "the arbitration award issued by [the arbitration panel]" on a motion to dismiss); see also Hemphill v. Kimberly-Clark Corp., 530 F. Supp. 2d 108, 111 (D.D.C. 2008) ("A court may take judicial notice of public records from other proceedings." (citing Covad Comms. Co. v. Bell Atl. Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005))).  Judicial notice of this document is particularly appropriate here, where the arbitration order was submitted to the Court jointly, both parties rely on it, and neither party has questioned its authenticity.

principal "is res judicata not only as to [the principal], the plaintiff in that suit, but also as to his surety, . . . the defendant herein"). And POST's claim in this suit is "the same" as its counterclaim in the arbitration, as the two are "based on the same nucleus of facts."[5] Perez, 2022 WL 474143, at *4 (quoting Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984)). Finally, the decisions of an arbitral tribunal are eligible to receive preclusive effect. E.g., Camp, 567 F. Supp. 2d at 173; Restatement (Second) of Judgments § 84(1) (Am. L. Inst. 1982) ("[A] valid and final award by arbitration has the same effects under the rules of res judicata . . . as a judgment of a court."). The real question is whether the arbitrator's January 13 order dismissing POST's counterclaim "with prejudice" for non-payment of fees is a "final judgment on the merits" entitled to preclusive effect in this Court. Compare Def.'s Mot. at 7–8 (answering in the affirmative), with Pl.'s Opp'n at 2 (answering in the negative).

BHSIC addresses this point in two sentences. It states, in full: "[A] dismissal with prejudice satisfies the third prong of the test because a dismissal with prejudice is considered a decision 'on the merits.' The fact that POST's Counterclaim was dismissed with prejudice, rather than being resolved after a formal hearing and with the benefit of a formal decision, is irrelevant." Def.'s Mot. at 7–8 (first citing Fed. R. Civ. P. 41(b); then citing Luna v. Rambo, 841 F. Supp. 2d 193, 196 (D.D.C. 2012); and then citing Green Aviation Mgmt. Co., LLC v. FAA, 676 F.3d 200, 201 (D.C. Cir. 2012)). At the outset, POST correctly notes that BHSIC "has not produced a single case . . . [stating] that an arbitration order 'dismissing with prejudice' a case before it for non-payment operates as res judicata." Pl.'s Opp'n at 2 (emphasis omitted). BHSIC does point to multiple cases from this District in which a final arbitration award was afforded claim-preclusive effect. E.g., Fordham, 49 F. Supp. 3d at 79, 83; Camp, 567 F. Supp. 2d at 172–74;

---

[5] Indeed, POST's counterclaim in arbitration incorporated by reference its complaint in this lawsuit. See Def.'s Ex. A [ECF No. 14-1] (a copy of POST's counterclaim in the arbitration). The two claims thus not only arise from the same nucleus of facts—they are literally identical.

7

Rosvoorouzhenie, 172 F. Supp. 2d at 86–87, 95–97.  But while these cases establish that arbitral decisions are <u>eligible</u> to preclude further litigation in federal court, they do not help the Court determine whether a dismissal with prejudice on the grounds of non-payment of fees has that same effect.

Instead, as the Court understands it, BHSIC puts forward a syllogism: a "dismissal with prejudice" (whether by an arbitrator or a court) is an adjudication "on the merits"; and an adjudication "on the merits" is entitled to preclusive effect, regardless of the reasoning; therefore, the arbitrator's dismissal with prejudice precludes POST from proceeding with this lawsuit.  But this syllogism does not hold up; indeed, it is directly contrary to Supreme Court precedent.

In <u>Semtek International Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497 (2001), the Supreme Court faced the question whether a dismissal with prejudice on statute of limitations grounds in California precluded a substantively identical suit in Maryland, where the limitations period was longer.  531 U.S. at 499–500.  The respondent contended that Federal Rule of Civil Procedure 41(b) required the application of claim preclusion because, under that rule, the California dismissal with prejudice "operate[d] as an adjudication upon the merits," <u>id.</u> at 501 (citation omitted), and because (as the Court summarized it), "all judgments denominated 'on the merits' are entitled to claim-preclusive effect," <u>id.</u>  In other words, the respondent in <u>Semtek</u> put forward precisely the same syllogism as BHSIC: because a dismissal with prejudice is an adjudication "on the merits," it is automatically entitled to preclusive effect in another court.

In a unanimous opinion, the Supreme Court rejected this argument.  <u>Semtek</u>, 531 U.S. at 501–03 ("Implicit in [respondent's] reasoning is the unstated minor premise that all judgments denominated 'on the merits' are entitled to claim-preclusive effect.  That premise is not necessarily valid.").  Instead, the Court expressed its view that, for purposes of claim preclusion, "on the merits" refers to a decision "that actually 'passes directly on the substance of a particular claim'

8

before the court." Id. at 501–02 (cleaned up) (quoting Restatement (Second) of Judgments § 19, cmt. a (Am L. Inst. 1981)). This understanding has the added benefit of aligning with the ordinary meaning of the phrase "on the merits." See On the Merits, Black's Law Dictionary (11th ed. 2019) ("(Of a judgment) delivered after the court has heard and evaluated the evidence and the parties' substantive arguments"); Judgment on the Merits, Black's Law Dictionary (11th ed. 2019) ("A judgment based on the evidence rather than on technical or procedural grounds . . . ." (emphasis added)). While the Court in Semtek acknowledged that the phrase "judgment on the merits" has also come to refer to "judgments . . . that do not pass upon the substantive merits of a claim," it clarified that what entitles a judgment to preclusive effect in other courts is not whether the term "on the merits" can be applied to it, but instead whether it actually decided the substance of the plaintiff's claim. 531 U.S. at 502–03. "In short, it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclusive effect."[6] Id. at 503.

And although the Court also concluded that, at least in the context of Rule 41(b), "adjudication upon the merits" is a synonym of "dismissal with prejudice" (thereby bolstering BHSIC's first premise), Semtek, 531 U.S. at 505; see also Havens v. Mabus, 759 F.3d 91, 98 (D.C. Cir. 2014) ("In Semtek, the Supreme Court concluded that an 'adjudication upon the merits' under Rule 41(b) is synonymous with a dismissal with prejudice . . . ."), it also clarified that preclusive effect in other courts does not follow from that appellation. Instead, dismissing a case "with prejudice" merely means that the dismissed claim cannot be brought again in the dismissing tribunal. See Semtek, 531 U.S. at 505–06 ("[T]he effect of the 'adjudication upon the merits'

---

[6] Given the Court's conclusion that D.C. preclusion law applies here, it is worth clarifying that the Semtek Court's comment about the meaning of "on the merits" was an observation regarding the content of state preclusion law, not a description of the federal common law of claim preclusion. See Semtek, 531 U.S. at 502 ("[The above-described meaning of 'on the merits'] is, we think, the meaning intended in those many statements to the effect that a judgment 'on the merits' triggers the doctrine of res judicata or claim preclusion."). This Court sees no indication that the Semtek Court's characterization is inaccurate with respect to D.C. law, particularly given its consonance with the ordinary meaning of "on the merits."

9

default provision of Rule 41(b) . . . is simply that, unlike a dismissal 'without prejudice,' the dismissal in the present case barred refiling of the same claim in the [dismissing court]."); Styskal v. Weld Cnty. Bd. of Cnty. Comm'rs, 365 F.3d 855, 859 (10th Cir. 2004) ("[W]hen a federal court rules that a dismissal is with prejudice, it is saying only that the claim cannot be refiled in that court." (cleaned up; citation omitted)). Such dismissals, though sometimes termed judgments "on the merits" (including by Rule 41(b)), receive preclusive effect in a different court only when they address the substance of a party's claim. Semtek, 531 U.S. at 502. In other words, a dismissal with prejudice is "undoubtedly a necessary condition, but it is not a sufficient one, for claim-preclusive effect in other courts." Id. at 506.

And indeed, the terms of the arbitrator's order in this case are best understood as barring POST only from pursuing its counterclaim before the arbitrator. The arbitrator's decision was issued pursuant to a rule permitting her to "limit[] a party's ability to assert or pursue [its] claim," Arbitrator's Order ¶ 3 (quoting AAA Construction Rules R-59(b)), and nothing in the order suggests that she intended (or was able) to do anything more than prohibit further proceedings in arbitration. Given Semtek's understanding of "with prejudice" as barring further proceedings only in the dismissing tribunal, the arbitrator's use of that term bolsters the Court's interpretation of the effect of her order; as BHSIC itself points out, "[t]here is no reason to believe that arbitration, which is presided over by attorneys and modeled on the court system, would have some secretive meaning for the term 'with prejudice' or otherwise would treat it differently than the courts," Def.'s Reply at 2 n.1.

Putting everything together, then, the arbitrator's order dismissing POST's counterclaim "with prejudice" serves only to bar POST from pursuing its counterclaim before the arbitrator. To warrant preclusive effect in other tribunals, the decision must have "actually pass[ed] directly on the substance of a particular claim before the [arbitrator]." Semtek, 531 U.S. at 501–02 (internal

10

quotation marks and citation omitted). And the arbitrator's January 13 order did not do so. The arbitrator's order, despite being a dismissal with prejudice, is not a judgment "on the merits" warranting preclusive effect in this Court; as a consequence, neither BHSIC nor WCS may raise a res judicata defense on the basis of the arbitrator's dismissal of POST's counterclaim.

The authorities BHSIC cites for its contrary position are not availing. BHSIC first cites Federal Rule of Civil Procedure 41(b). See Def.'s Mot. at 7. But Rule 41(b) does not prescribe the preclusive effect arbitration decisions receive in federal court,[7] and if BHSIC means to analogize the arbitrator's dismissal to a similar order by a federal judge, the analogy fails. A judicial dismissal for failure to satisfy a precondition to suit is not ordinarily treated as an "adjudication on the merits" under Rule 41(b), Costello v. United States, 365 U.S. 265, 285–88 (1961), or, for that matter, under the common law of res judicata, see Cavell v. 2300 Rest., Inc., 134 A.2d 583, 585 (D.C. 1957) ("An action which is terminated because of a technical defect does not foreclose further litigation once that defect is removed."); Restatement (Second) of Judgments § 20(2) (Am. L. Inst. 1982).[8] And even if (as here), the hypothetical district judge had specified that the dismissal was to be "with prejudice," Semtek makes clear that such a designation does not automatically entitle that judgment to preclusive effect in another court. See 531 U.S. at 505–06.

BHSIC next cites Luna v. Rambo, 841 F. Supp. 2d 193 (D.D.C. 2012), and (indirectly) United States v. Lindsey, 47 F.3d 440 (D.C. Cir.), vacated on other grounds sub nom. Robinson v. United States, 516 U.S. 1023 (1995), for the proposition that "in civil suits, dismissal 'with

---

[7] Indeed, it does not even prescribe the preclusive effect of federal court decisions. Semtek, 531 U.S. at 503 ("Rule 41(b) . . . .would be a highly peculiar context in which to announce a federally prescribed rule on the complex question of claim preclusion.").

[8] This rule aligns with Semtek's understanding of the preclusive effect of non-merits dismissals: courts traditionally resist barring future actions on the basis of dismissals which do not touch the substance of the party's claim. So although the AAA Construction Rules do permit the arbitrator to dismiss POST's counterclaim with prejudice for non-payment of fees (an exception to the general rule attested in Costello and the Restatement), to attribute claim-preclusive effect to this non-merits dismissal would fly in the face of ordinary res judicata principles.

11

prejudice' is said to operate as an adjudication on the merits, is entitled to res judicata effect, and thus bars further litigation between the parties on the same cause of action." Def.'s Mot. at 7 (cleaned up) (quoting Luna, 841 F. Supp. 2d at 196). But these cases are inapposite: neither court afforded preclusive effect to anything resembling a non-substantive dismissal by an arbitrator, nor did either court have cause to delve into the nuances of preclusion.[9] Instead, this quoted dictum is better read as (accurately) describing the usual rule: most dismissals with prejudice are indeed judgments "on the merits" for purposes of claim preclusion. The Court declines to read either Luna or Lindsey to suggest anything more.[10]

Finally, BHSIC cites Green Aviation Management Co., LLC v. FAA, 676 F.3d 200, 201 (D.C. Cir. 2012), for the proposition that "[a] dismissal with prejudice has res judicata effect." See Def.'s Mot. at 7–8. But BHSIC has again excerpted a helpful fraction of a sentence from a case entirely dissimilar to the present situation. Green Aviation addressed whether the defendant in a proceeding before an FAA Administrative Law Judge was eligible to receive attorney's fees after the ALJ dismissed the matter "with prejudice" following the FAA's withdrawal of its complaint. See 676 F.3d at 200–01. The D.C. Circuit noted that "the FAA could not re-file a complaint based on the same set of facts because the dismissal with prejudice has res judicata effect" and held that Green Aviation's consequent protection from further litigation constituted "judicial relief," one of

---

[9] In Luna, Judge Boasberg afforded preclusive effect to a D.C. Superior Court dismissal with prejudice, but that dismissal was based on a joint motion asking for a dismissal with prejudice and on a settlement agreement in which parties evinced an intention to "foreclose new litigation." Luna, 841 F. Supp. 2d at 195 (citation omitted); see Ex. 10 to Mot. for Summ. J., Luna, Civ. A. No. 09-2331-JEB (D.D.C. Aug. 22, 2011), ECF No. 31-10 (order granting parties' consent motion seeking dismissal with prejudice). The facts of Lindsey are even farther afield. That case involved an appeal of a criminal conviction rather than a civil judgment, and the D.C. Circuit briefly summarized civil claim preclusion only in the course of explaining why a previous dismissal of a criminal indictment "with prejudice" did not bar a second prosecution of a defendant under double jeopardy principles. See Lindsey, 47 F.3d at 444.

[10] Of course, to the extent Luna or Lindsey does articulate the more sweeping rule BHSIC advocates, such a rule is contrary to Semtek and is not good law.

the requirements for fee eligibility.[11] See id. at 205. Green Aviation is not just factually inapt—rather, that opinion suggests only that a dismissal with prejudice prevents a plaintiff from refiling in the same tribunal (in that case, before an agency ALJ). This, of course, was the Supreme Court's understanding of "with prejudice" in Semtek and the one the Court has adopted here. Thus, Green Aviation helps BHSIC only if one assumes that a dismissal barring relitigation in the dismissing tribunal automatically bars relitigation in other tribunals, an assumption conclusively rejected in Semtek.[12]

In sum, the arbitrator's January 13 order prevents POST from pursuing its claim in arbitration, but because it did not "pass[] directly on the substance of a particular claim before the court," Semtek, 531 U.S. at 501–02 (cleaned up; citation omitted), it is not a "judgment on the merits" entitled to preclusive effect in federal court. And because res judicata is the only basis for dismissal presently before the Court, the instant motion to dismiss must be denied.[13] Nonetheless,

---

[11] BHSIC's confusion here may stem from the ambiguity of the term "res judicata effect." A dismissal with prejudice does have a kind of "preclusive effect" (barring a subsequent suit in the same tribunal), and that effect can be referred to as an example of "res judicata." So the D.C. Circuit's statement in Green Aviation is not wrong—a dismissal with prejudice does have "res judicata effect," but that effect does not necessarily extend to precluding litigation in another tribunal.

[12] This understanding of "with prejudice" is also present in United States v. Lindsey, though the D.C. Circuit's discussion is less instructive given that case's posture. There, the court explained that the D.C. Superior Court's previous dismissal of the indictment against the defendant was made "with prejudice" only in order "to yield jurisdiction to the federal district court," where another indictment was then pending. 47 F.3d at 444. "Understood in its proper context, then, [the previous] dismissal 'with prejudice' merely operated to bar reprosecution in the District of Columbia courts . . . ." Id. (emphasis added).

[13] BHSIC also seeks leave to file a motion for sanctions against POST because "there is no good faith basis for POST asserting a right to continue to litigate these claims against BHSIC." Def.'s Mot. at 12; accord Def.'s Reply at 8. Obviously, POST's position is not frivolous—it is correct. The Court further notes the irony of a party seeking sanctions based on its opponent's frivolous argument when its own position is all but foreclosed by Supreme Court precedent it never cited. To be sure, POST's opposition brief, containing only three substantive pages and not a single case citation, is far from stellar advocacy. But, contrary to BHSIC's apparent view, motions cannot be decided by counting the cases cited and seeing which party's tally is greater. See Def.'s Reply at 4 ("It should be beyond dispute that the seventeen (17) cases cited by BHSIC are more persuasive than the zero (0) cases cited by POST.").

BHSIC also seeks sanctions on the basis of POST's failure to engage with the substance of BHSIC's motion during the meet-and-confer process. Def.'s Mot. at 12 ("BHSIC has, for months, told POST it believed there was no good faith basis for continuing this matter after the dismissal with prejudice, and requested any support from POST for its position. None has been provided."). Again, the Court cannot endorse this apparent failure to cooperate with opposing counsel and to work in good faith to avoid potentially unnecessary motions practice. Nonetheless, although meet-and-confer is a salutary practice with benefits both for the parties and for the Court, there is no obligation to prepare and divulge a response to a proposed motion to dismiss. Cf. L. Civ. R. 7(m) (imposing a duty to confer with

for the reasons explained below, the Court will stay BHSIC's deadline to answer POST's amended complaint and instead permit the parties to make additional submissions regarding the path forward in this case.

For one, the Court is sympathetic to BHSIC's objections that permitting POST's claim to proceed would "create a significant loophole in arbitration agreements," Def.'s Mot. at 9 (cleaned up), and would effectively reward POST's failure to complete arbitration with "a second bite at the apple," id. at 2. But this Court is not the first to confront a situation in which arbitral proceedings terminate without an award due to non-payment of fees and the non-paying party seeks to return to federal court to litigate. In Tillman v. Tillman, 825 F.3d 1069 (9th Cir. 2016), the Ninth Circuit addressed this scenario and concluded that the plaintiff's case could proceed in federal court. 825 F.3d at 1075–76.[14] The Tillman court specifically noted, however, that its rule "does not mean that parties may refuse to arbitrate by choosing not to pay for arbitration," id. at 1075; instead, the court relied on the district court's "express[] [finding] that Tillman lacked the resources to deposit the arbitration fee," id. Tillman has been followed by several district courts around the country and, as elaborated by those subsequent courts, the Tillman rule permits a party whose arbitral claim is dismissed for non-payment of fees to pursue its claims in federal court only if it attempted to arbitrate in good faith, failed to pay its fees because of an actual inability to pay, and exercised reasonable diligence both in attempting to obtain funds and in communicating its difficulties to the arbitrator and the other party.[15]

---

opposition counsel only with respect to "nondispositive motion[s]"). At the motion to dismiss stage, a plaintiff has the prerogative to put the defendant to his proof, so to speak, and force the defendant to convince a judge that the suit must be dismissed. Even assuming the truth of BSHIC's representations, then, the Court does not find sanctions warranted.

[14] Notably, neither the parties nor the Ninth Circuit mentioned the possibility that res judicata might bar the plaintiff's claim.

[15] See, e.g., Billie v. Coverall N. Am., No. 3:19-CV-00092 (JCH), 2022 WL 807075, at *12 (D. Conn. Mar. 16, 2022) (permitting suit by non-paying party to proceed "[b]ecause [he] genuinely could not afford the arbitrator's fees, but made diligent efforts to arbitrate in good faith before the arbitration terminated"); CellInfo, LLC v. Am. Tower Corp., 506 F. Supp. 3d 61, 67 (D. Mass. 2020) ("[A] party should do more than simply show empty pockets.");

The Court finds the Tillman rule appealing: its stringent standard responds to BHSIC's concerns about bad-faith actors evading arbitration agreements by refusing to pay, e.g., Def.'s Mot. at 11, and it obviates BHSIC's objection that permitting POST to proceed in federal court is inconsistent with the federal policy favoring arbitration, id. at 9–10; see Tillman, 825 F.3d at 1075–76 (explicitly rejecting a similar argument). But at the same time, Tillman is not on all fours with this case. Whereas much of Tillman's discussion focused on the Federal Arbitration Act, that statute is irrelevant where (as in this case) the defendant is a third party who was not before the arbitrator and does not have an arbitration agreement with the plaintiff. And the difference in the postures of Tillman and the case at bar complicates the available remedies should the Court conclude that POST does not satisfy the Tillman rule. Unlike in Tillman, this Court is unable to compel arbitration under the Federal Arbitration Act (since no arbitration agreement exists), nor could it dismiss this case for POST's failure to prosecute or for disobeying a court order to arbitrate (because no such order was issued). See Tillman, 825 F.3d at 1075–76 (suggesting these three courses of action "[i]f Tillman had refused to pay for arbitration despite having the capacity to do so").

But neither Tillman nor its progeny appear in the parties' briefing. Given Tillman's imperfect fit with this case and the fact that the Court would need to make factual findings in order to apply the Tillman rule, further input from the parties is required. Accordingly, in their future submissions, the parties should discuss (1) whether the Court should adopt the Tillman rule in this case; (2) whether POST satisfies Tillman's standard; and (3) if the Court adopts the Tillman rule

---

see also Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1294 (10th Cir. 2015) (finding non-paying party in default in the arbitration proceedings because he "did not show he was unable to afford payment, ask the arbitrators to modify his payment schedule, or move for an order requiring [the other party] to pay his share for him so that arbitration could continue"); cf. Weiler v. Marcus & Millichap Real Estate Inv. Servs., Inc., 232 Cal. Rptr. 3d 155, 164 (Cal. Ct. App. 2018) (adopting Tillman rule in context of a California state court procedure and providing for relief only "when a party who has engaged in arbitration in good faith is unable to afford to continue in such a forum" and "the court concludes the party's financial status is not a result of the party's intentional attempt to avoid arbitration").

15

but POST does not satisfy its standard, what action the Court should take and the legal basis therefor.[16]

In addition, the Court is somewhat hamstrung by significant lacunae in the record: neither the payment bond BHSIC allegedly issued to WCS, see Am. Compl. ¶¶ 2, 38–39, nor the arbitration agreement between POST and WCS, see Def.'s Mot at 10 (adverting to the existence of an "arbitration provision in [POST's] subcontract" with WCS), are presently before the Court. As a result, the Court is unaware of any language in these documents that might bear on the scope of POST's obligation to arbitrate and/or BHSIC's rights with respect to that obligation. Likewise, there may be aspects of the law governing the relationship between sureties and principals which are relevant here, either on their own or in conjunction with the terms of the payment bond or arbitration agreement. Due to BHSIC's exclusive focus on res judicata in the present motion, no such arguments have been presented to the Court.

"[T]here is 'no totally satisfactory solution' to a party's nonpayment of its share of arbitration fees." Tillman, 835 F.3d at 1076 (quoting Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1013 (9th Cir. 2004)). And in the present case (which proves the truth of that dictum), the Court simply does not have what it needs to reach a resolution. Rather than muddling ahead on an imperfect record and with limited legal argumentation, then, the Court will put the ball back in the parties' court to submit additional filings regarding the appropriate path forward in this litigation. Those filings could take the form of another motion to dismiss by BHSIC followed by adversarial briefing, a proposed scheduling order, or something else—what kind of

---

[16] As the Tillman court notes, "'[d]istrict courts have an obligation and a duty to decide cases properly before them,' absent a firm basis for declining to do so." 825 F.3d at 1075 (quoting S. Cal. Edison Co. v. Lynch, 307 F.3d 794, 805 (9th Cir. 2002)). That obligation is not overcome by objections that permitting an action to proceed would be unfair or would prejudice the defendant. If BHSIC wishes to seek dismissal again, it must point the Court to a rule of law requiring such a dismissal and a procedural mechanism by which the Court may order it. Without this kind of "firm basis" mandating dismissal, POST's suit would normally be permitted to go forward.

submission makes the most sense will be determined by the parties' discussions, the results of their research, and their strategic decisions.

## CONCLUSION

For the reasons explained above, the arbitrator's January 13 order dismissing POST's counterclaim with prejudice is not a judgment on the merits entitled to claim-preclusive effect in federal court. Accordingly, the Court will deny BHSIC's motion to dismiss. But neither the parties' narrow briefing nor the limited record before the Court enable it to chart a satisfactory path forward for this litigation. In order to give the parties additional time to fill the gaps in the record and to consider anew the continued viability of POST's claim, the Court will stay BHSIC's deadline to answer and permit the parties to make additional filings consistent with the above discussion by not later than September 9. An accompanying order to that effect will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 5, 2022